Adria K. Herry (SBN 324333)
Email: AHerry@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
Telephone: +1 310 734 5200
Facsimile: +1 310 734 5299

David W. Long-Daniels (*Pro Hac Vice Forthcoming*)
DLong-Daniels@reedsmith.com
Ansley K. Fantaski (*Pro Hac Vice Forthcoming*)
Afantaski@reedsmith.com
REED SMITH LLP
1020 Spring Street NW, Suite 1100
Atlanta, GA 30309
Telephone: 470.947.5800
Facsimile: 470.947.5799

Attorneys for Plaintiffs
Integra Testing Services, LLC, RSAnalysis, LLC, and Integra Services Holdings, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

INTEGRA TESTING SERVICES, LLC, a Delaware limited liability company, RSANALYSIS, LLC, a California limited liability company, and INTEGRA SERVICES HOLDINGS, LLC, a Delaware limited liability company,

Plaintiffs,

v.

ERIC GRUNDMEIER, an individual, AIR BALANCE CO., INC., a California corporation, and DOES 1-10,

Defendants.

CASE NO. ____________________

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**

**(1) BREACH OF CONTRACT (GRUNDMEIER);**
**(2) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**
**(3) BREACH OF DUTY OF LOYALTY/FIDUCIARY DUTY;**
**(4) AIDING AND ABETTING BREACH OF DUTY OF LOYALTY/FIDUCIARY DUTY;**
**(5) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 ET SEQ.;**
**(6) INTENTIONAL**

**INTERFERENCE WITH CONTRACTUAL RELATIONS;**
**(7) CIVIL CONSPIRACY; AND**
**(8) VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *ET. SEQ.***

**JURY TRIAL DEMANDED**

Plaintiffs Integra Testing Services, LLC ("Integra"), RSAnalysis, LLC ("RSA"), and Integra Services Holdings, LLC ("Holdings", and together with Integra and RSA, "Plaintiffs") bring this action against former employee, Eric Grundmeier ("Grundmeier"), as well as his current employer, Air Balance Co., Inc. ("ABCO"), and Does 1 through 10 (the "Doe Defendants", and together with Grundmeier and ABCO, the "Defendants"), and hereby allege as follows:

**INTRODUCTION AND NATURE OF THE ACTION**

1. Integra is a leading provider of testing, adjusting, and balancing ("TAB") for HVAC systems and building-commissioning services in the United States and Mexico for a diverse range of facilities, including hospitals, schools, laboratories, and commercial buildings. Integra's competitive advantage depends on its confidential pricing data, proprietary estimating methodologies, customer relationships, compiled contact networks, and active project bid information—all of which constitute valuable trade secrets.

2. In September 2022, Integra acquired RSAnalysis, LLC[1], a California limited liability company. RSA, now doing business as Integra, provides TAB services for HVAC systems and building-commissioning services and maintains a strong presence and capabilities in the California market.

3. ABCO provides TAB services for HVAC systems for commercial, institutional, industrial, and hospital customers in California. ABCO and Plaintiffs are direct competitors.

4. Grundmeier served as a manager at RSA and was entrusted with wide-ranging

[1] In September 2022, Integra acquired RSAnalysis Opco, LLC. In October 2022, RSAnalysis Opco, LLC legally changed its name to RSAnalysis, LLC.

access to Plaintiffs' most competitively sensitive information, including detailed cost and billing data, active project bids, client contacts, and proprietary estimating tools. In exchange for this trust, Grundmeier entered into an agreement with Integra's parent company, Integra Services Holdings, LLC, pursuant to which, Grundmeier received a profits interest in Plaintiffs and substantial retention compensation, and agreed not to use or disclose any of Plaintiffs' confidential information or trade secrets to which he had access during his employment with RSA. Grundmeier further agreed to return Plaintiffs' property upon termination or resignation from RSA.

5. Unbeknownst to Plaintiffs, in or around February 2026, Grundmeier began discussions with Plaintiffs' competitor, ABCO, regarding employment opportunities.

6. While still employed by RSA and secretly negotiating to join its competitor ABCO, Grundmeier systematically extracted Plaintiffs' confidential information and trade secrets—including over three years of cost and billing data, compiled customer/vendor contact lists, and active project bid files—and deliberately sabotaged Plaintiffs' competitive bids to steer client work to ABCO. Grundmeier's co-conspirator ABCO knowingly induced, facilitated, and benefited from these acts.

7. Grundmeier resigned on March 16, 2026, with his last day of employment on March 20, 2026. He immediately joined ABCO. Upon information and belief, ABCO did not operate in Northern California prior to Grundmeier's March 2026 departure from RSA. Since Grundmeier's departure, ABCO has been awarded multiple contracts in Northern California that Plaintiffs were bidding on or had been told Plaintiffs would receive, and ABCO instantly acquired work Plaintiffs had been performing for several of Plaintiffs' longstanding clients that had previously been overseen by Grundmeier in his role as District Manager for RSA.

8. Given the suspicious circumstances of Grundmeier's abrupt resignation, coupled with ABCO's swift attainment of contracts Plaintiffs were bidding on and Plaintiffs' longtime customers in the area Grundmeier previously served for RSA, Plaintiffs promptly undertook a preliminary investigation into the circumstances of Grundmeier's

departure. The preliminary investigation uncovered conduct consistent with findings that, immediately prior to Grundmeier's departure to ABCO, Grundmeier coordinated his departure with ABCO in advance, systemically extracted Plaintiffs' confidential business data to use in his employment with ABCO, and deliberately inflated Plaintiffs' project pricing as part of a plan to redirect Plaintiffs' contracts to ABCO.

9. Based on these initial findings and on information and belief, Grundmeier and ABCO have solicited and diverted Plaintiffs' customers and employees using Plaintiffs' confidential information.

10. On information and belief, Grundmeier intentionally withheld from Plaintiffs that he had obtained a job offer with a competitor so that he could continue to access Plaintiffs' confidential information and trade secrets with the plan to steal Plaintiffs' proprietary information before he resigned. On information and belief, Grundmeier intended to use this highly confidential and trade secret information in his employment with ABCO.

11. Plaintiffs seek compensatory and exemplary damages, injunctive relief, and all other relief authorized by law to redress and prevent the continuing harm caused by Defendants' unlawful conduct.

## THE PARTIES, JURISDICTION, AND VENUE

12. Integra is a limited liability company licensed under the laws of the State of Delaware. Its California division is located in El Dorado Hills, El Dorado County, California.

13. RSA is a limited liability company under the laws of the State of California, with its principal place of business in El Dorado Hills, El Dorado County, California.

14. Holdings is a limited liability company under the laws of the State of Delaware and is the parent company of Integra and RSA.

15. Grundmeier is a natural person and, on information and belief, a resident of Loomis, Placer County, California.

16. Grundmeier was previously an employee of RSA and had and/or has

contractual, fiduciary, and common law duties to Plaintiffs.

17. ABCO is a corporation licensed under the laws of the State of California, with its principal place of business in Covina, Los Angeles County, California.

18. The true names and capacities of the Doe Defendants are unknown to Plaintiffs, which is informed and believes that they are also responsible for the harms alleged herein. Plaintiffs will seek leave to further amend this Complaint once their true names and capacities are ascertained.

19. This Court presently has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, as Plaintiffs have alleged a cause of action under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

20. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy as the federal claims and form part of the same transaction or occurrence.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because ABCO resides in this District (in Covina, Los Angeles County, California), and a substantial part of the events or omissions giving rise to the claims occurred in this District, including the coordination of Grundmeier's departure and ABCO's expansion from its headquarters in this District.

## FACTUAL ALLEGATIONS

### A. Plaintiffs' Business and Grundmeier's Role

22. Plaintiffs provide building commissioning, building consulting services, controlled environment services, fire, life, and safety services, and TAB services across the United States and Mexico.

23. A large part of Plaintiffs' business is TAB services for HVAC units for hospital, education, commercial, residential, and government customers.

24. Many of Plaintiffs' customers utilize Plaintiffs' services on a recurring basis. This recurring business is generated and developed based on Plaintiffs' relationships and goodwill with its customers.

25. Plaintiffs employ people like Grundmeier to manage and service Plaintiffs' existing customers and grow Plaintiffs' customer base by selling Plaintiffs' services.

26. From 2022 through early 2026, Grundmeier was a General Manager with direct responsibility for operational management, project estimation, client relationships, and oversight of subordinate employees.

27. In or around January 2026, Grundmeier was promoted to District Manager. His district encompassed California, Nevada, and Utah.

28. As District Manager, Grundmeier was responsible for the financial, operational, customer, and cultural performance of his district. The District Manager supports revenue growth and owns profitability, customer satisfaction, safety, and team performance across all applicable services delivered within the district. The District Manager builds a strong Integra culture and ensures consistent execution of Plaintiffs' operating model while driving profitable growth.

29. In his capacity as District Manager, Grundmeier was specifically responsible and accountable for, among other things:

(a) Owning revenue and gross margin for the district;

(b) Supporting pricing and managing recurring and project based business to drive profitable growth;

(c) Monitoring financial performance, analyzing variances, and taking corrective action;

(d) Owning customer satisfaction, retention, and growth across the district;

(e) Developing and maintaining strong relationships with key customers and partners;

(f) Driving expansion of existing accounts and penetration of new opportunities;

(g) Developing and maintaining strong relationships with key customers and partners; and

(h) Driving expansion of existing accounts and penetration of new

opportunities.

30. To effectuate his leadership and operational responsibilities, Grundmeier had broad access to Plaintiffs' data relating to Plaintiffs' actual and prospective customer relationships, including Plaintiffs' most competitively sensitive information such as detailed cost and billing data, pricing strategies, pricing histories, client contracts, active and pending project bids, client contact information, customer preferences and renewal dates, and proprietary estimating tools. Grundmeier's access also included information on special projects and strategic initiatives.

31. Reflecting the trust and confidence Plaintiffs placed in Grundmeier, and to incentivize his continued loyalty, Plaintiffs paid Grundmeier substantial retention compensation totaling $950,000 in three installments: $300,000 on September 28, 2023; $300,000 on September 26, 2024; and $350,000 on September 25, 2025.

32. Additionally, Grundmeier held 15,000 Profits Interest Units in Holdings, further aligning his financial interests with the Company's success and reflecting the extraordinary level of access and trust afforded to him.

33. Plaintiffs' core business is Plaintiffs' relationships with its customers, which Plaintiffs have expended significant time, money, and resources to develop, preserve, and grow. Plaintiffs' success depends on Plaintiffs' proprietary pricing and cost data, compiled customer contact networks, project estimating methodologies, and active bid information.

34. Plaintiffs have created, developed, maintained, and protected confidential and/or proprietary tools, databases, formulas, compilations of data and information, and/or other non-public information to tailor products and services for customers in a manner that is unique in the TAB industry and is different in material ways from its competitors – like ABCO.

35. Plaintiffs' trade secrets and other commercially sensitive, confidential, proprietary, and/or non-public information include, but are not limited to, extensive data repositories and spreadsheets related to its services and customers that contain categories of information not known or discoverable to the general public or those in the same industry.

These data repositories and spreadsheets are invaluable to Plaintiffs and contain both highly confidential and trade secret information, including the identities of Plaintiffs' customers, the names of their customer contacts and their contact information; terms of business dealings with customers; information about the quality of the relationships; cost and billing data; and customer pricing history, service dates, preferences, estimating tools, and bid information.

36. Plaintiffs' business relies on maintaining the highly confidential nature of their proprietary and trade secret information. Plaintiffs implement reasonable measures to maintain the confidentiality of their confidential and proprietary information, including, but not limited to, the following:

(a) Plaintiffs require employees to execute certain agreements governing the use of their confidential and proprietary information.

(b) Plaintiffs implement policies regarding their confidential and proprietary information, which employees are required to understand, acknowledge, and follow.

(c) Plaintiffs utilize security protocols, including, but not limited to, password protected databases and systems requiring unique login credentials that must be used to access their confidential and proprietary information and systems.

(d) Plaintiffs terminate access to their systems when employees depart from Plaintiffs and require that Plaintiffs' property and confidential and proprietary information be promptly returned to it.

(e) Plaintiffs seek to enforce their agreements regarding their proprietary and confidential information with current and former employees.

**B. The Profits Interest Agreement and Restrictive Covenants**

37. Effective September 30, 2022, Holdings and Grundmeier entered into a Profits Interest Agreement (the "Agreement") pursuant to which Holdings granted Grundmeier 15,000 Class B Common Units ("Profits Interest Units") in Holdings. A true and correct

copy of the Agreement is attached hereto as Exhibit A and incorporated by reference.[2]

38. Grundmeier's access to Plaintiffs' confidential information and trade secrets was and is protected by the confidentiality provision in the Agreement. Specifically, Section 8 of the Agreement, which protects Plaintiffs' legitimate business interests, reads as follows:

> Confidential Information. The Grantee acknowledges that the information, observations and data obtained by the Grantee while providing services to the Company Group prior to the date of this Agreement concerning the business or affairs of the Company Group ("Confidential Information") are the property of the Company Group. Therefore, the Grantee agrees that he shall not directly or indirectly disclose to any unauthorized Person or use for his own account any Confidential Information without the prior written consent of the Board, unless and then only to the extent that the Confidential Information is or becomes generally known to and available for use by the public other than as a result of the Grantee's acts or omissions to act or are obtained from a third party without restrictions on further disclosure. The Grantee shall deliver to the Company on the date of his separation from the Company Group, or at any other time the Company may request, all memoranda, notes, plans, records, reports, computer tapes and software and other documents and data (and copies thereof) relating to the Confidential Information, inventions, improvements and discoveries of the business of the Company Group which he may then possess or have under his control.

---

[2] Plaintiffs acknowledge that the non-compete covenant (Section 8(c)(i)) and non-solicitation covenant (Section 8(c)(ii)) in the Agreement, as well as the Delaware choice-of-law and forum-selection provisions therein, are void and unenforceable as to Grundmeier as a California employee pursuant to California Business & Professions Code Sections 16600 and 16600.5, and Plaintiffs do not assert those covenants in this action. Plaintiffs' breach-of-contract claim is based on the confidentiality (Section 8(a)) and return-of-property (Section 8(a)) covenants. California law governs this action.

### C. Grundmeier's Secret Pre-Departure Negotiations with ABCO

39. On information and belief, prior to Grundmeier's departure from RSA, ABCO did not perform HVAC TAB services in Northern California, and its California operations were limited to the Southern California area.

40. On information and belief, in or around early 2026, ABCO was looking to expand its presence to Northern California and planned to use Grundmeier to execute its targeted expansion.

41. On information and belief, beginning no later than early February 2026, and while still employed by RSA and subject to his contractual obligations, Grundmeier secretly began negotiating employment with ABCO, a direct competitor of Plaintiffs in the TAB market.

42. Plaintiffs' investigation of Grundmeier's company-issued cellular telephone records revealed five telephone calls totaling 209 minutes between Grundmeier and Dennis Karatzias ("Karatzias"), co-owner of ABCO, within a fifteen-day window from February 13 through February 28, 2026:

(a) February 13, 2026: Inbound call from Karatzias, 27 minutes.

(b) February 20, 2026: Inbound call from Karatzias, 1 minute.

(c) February 23, 2026: Outbound call to Karatzias, 55 minutes. AT&T cellular tower routing data (COV-BALDPK) placed Grundmeier's handset physically in the Covina/Baldwin Park area—approximately 400 miles south of Integra's El Dorado Hills office and the location of ABCO's headquarters—at the time of this call.

(d) February 28, 2026: Two inbound calls from Karatzias, of 64 minutes and 62 minutes (126 minutes in a single day).

43. On February 17, 2026—within this contact window—Grundmeier told Integra staff he was at Disneyland with his family in Southern California. On information and belief, Grundmeier traveled to Southern California to meet with ABCO personnel, visit ABCO's headquarters, and discuss his prospective employment with ABCO.

44. On information and belief, ABCO formed a new limited liability company entity in April 2025 and purchased commercial property in Roseville, California, in the week immediately following Grundmeier's March 20, 2026 departure from RSA. On information and belief, ABCO purchased its commercial property in Roseville, California immediately after Grundmeier's exit due to ABCO having secured commitments from Grundmeier prior to his departure from RSA and to enable ABCO to quickly expand in Northern California immediately following Grundmeier's departure from RSA.

**D. Systematic Extraction of Plaintiffs' Confidential Information**

45. While still employed by RSA and during the same period he was negotiating with ABCO, Grundmeier systematically extracted Plaintiffs' confidential business information through multiple channels.

46. On February 24, 2026, during the Karatzias contact window, Grundmeier directed Plaintiffs' customer, EMCOR Services, to send a TAB quote request for a project to "Fredo" with a copy to himself—an unusual routing of a client quote request through himself.

47. On February 25, 2026, during the Karatzias contact window, Grundmeier ran a "Cost and Billing Detail Query" covering the period from January 1, 2023 through February 25, 2026—extracting over three years of Plaintiffs' cost and billing data in a single session. The resulting workbook is inconsistent with routine project-management activity and is consistent with the compilation of comprehensive financial intelligence for use by a competitor.

48. On February 28, 2026—a Saturday, and the same day Grundmeier spent over two hours on the phone with ABCO's owner—Grundmeier used Microsoft 365 CoPilot to systematically extract Plaintiffs' customer and vendor contact network from his corporate email account. Grundmeier specifically directed CoPilot to: pull all contact information and build a contact list; split the output CSV by company; search his people directory for external contacts; and include names and email addresses of everyone who had ever emailed him. This process produced structured, exportable customer/vendor contact lists

encompassing contacts at, among others, Kaiser Permanente, Stanford Health, EMCOR Services, and other major customers and vendors of Plaintiffs.

49. On March 3, 2026—seventeen days before his departure—Grundmeier deleted from his Integra-issued computer his signed profits interest agreement, signed retention bonus agreement, offer letter, and draft retention documents.

50. Grundmeier's OneDrive access history shows only seven files accessed since February 7, 2024. Four of those files were accessed after business hours between March 13 and March 16, 2026—the night of and the same day Grundmeier submitted his resignation letter and included active-client bid and bid files containing Plaintiffs' proprietary pricing and estimating information, including for the customers Grundmeier redirected to ABCO.

51. Upon information and belief, Grundmeier deliberately cleared his browser history during the period of his ABCO negotiations. Further browser-clearing activity was documented on Grundmeier's computer on his last day of employment, March 20, 2026.

**E. Bid Sabotage and Breach of Duty While Still Employed**

52. While still employed by RSA and subject to his duty of loyalty, Grundmeier deliberately sabotaged Plaintiffs' competitive bids to ensure ABCO—rather than Plaintiffs—would receive the work upon Grundmeier's departure.

53. On February 4, 2026, Coltan Engman ("Engman"), a former RSA employee who now works for ABCO, looped Grundmeier into a customer proposal. Under Grundmeier and Engman's direction, Plaintiffs submitted a bid that included inflated components and items not historically included in these types of bids. Following Grundmeier and Engman's departure, Plaintiffs learned that ABCO was awarded this work with a bid of approximately $55,000 less than Plaintiffs' bid.

54. On or about February 11, 2026, Grundmeier priced a proposal to Sutter Health for recurring fire/smoke damper certification work with no straight-time labor, despite the proposal's request for that information. The proposal was structured to effectively price Plaintiffs out of the work. After Grundmeier's departure, in June 2026, Sutter Health confirmed that Plaintiffs' pricing was too high and that it awarded the recurring healthcare

contract work to ABCO.

**F. Post-Departure Customer Diversion**

55. Ryan Pascoe ("Pascoe") and Joel Johnson ("Johnson") are prior RSA employees who both began working for ABCO in the weeks following Grundmeier's departure. In October 2025, Plaintiffs bid on a project for a customer, and based on information from Pascoe and Johnson, were told that Plaintiffs were awarded the contract and Plaintiffs began work on the project. In Q2 2026, when Plaintiffs followed up for payment, the customer informed Plaintiffs that the project had not been awarded to Plaintiffs but to ABCO. On information and belief, Grundmeier, Johnson, Pascoe, and/or ABCO diverted this project from Plaintiffs using Plaintiffs' confidential client information and relationships.

56. Marcus Harmon ("Harmon") is a prior RSA employee, who began working for ABCO in April 2026. On April 2, 2026, five (5) days prior to his resignation, Harmon directed one of Plaintiffs' customers to contact Grundmeier who was already working at ABCO. This constitutes active redirection of Plaintiffs' customer to ABCO by a current RSA employee acting in concert with Grundmeier and/or ABCO.

57. Upon information and belief, Grundmeier assisted ABCO in obtaining work from AIRCO Mechanical, after the customer had told Plaintiffs the contract was awarded to Plaintiffs. In addition, ABCO did not initially bid on the project.

58. On information and belief, before departing RSA, Grundmeier was issued a personal ABCO telephone number. On March 19, 2026, one day prior to Grundmeier's last day at RSA, Johnson made two phone calls to Grundmeier on Grundmeier's personal ABCO telephone number.

59. Engman deliberately reset and wiped his Integra-issued computer before returning it to Integra. Engman abruptly resigned on March 19, 2026, and departed on March 20, 2026—the same day as Grundmeier.

//

**G. Defendants' Continued Retention and Use of Plaintiffs' Confidential**

**Information and Trade Secrets**

60. On information and belief, Grundmeier and ABCO have used and continue to use Plaintiffs' highly confidential and proprietary trade secret information, extracted from Plaintiffs' systems by Grundmeier prior to his departure from RSA, to target Plaintiffs' customers based on information not available to the public—such as, e.g., non-public customer contact information (including who, specifically, within each organization is responsible for negotiating and awarding jobs), customer job histories (including contracts, purchase orders, and bid submissions), customer pricing and margin rates, customer renewal information (including dates of HVAC inspection certification expiration pertinent to renewal opportunities), customer preferences, and other confidential information.

61. Current customers of Plaintiffs have informed Plaintiffs that they are being targeted by ABCO. On information and belief, Grundmeier and ABCO are using Plaintiffs' customers' non-public information—specifically and strategically timed based on the customers' renewal dates and based on Plaintiffs' pricing methodology, which are not publicly available—to sell them services from ABCO.

62. On information and belief, Plaintiffs' revenues in the California market have declined significantly due to Grundmeier's and ABCO's use of Plaintiffs' confidential information and trade secrets to obtain Plaintiffs' customers and contract bids, and Plaintiffs' client retention rates have dropped.

63. On information and belief, Grundmeier and ABCO continue to have access to Plaintiffs' confidential information and trade secrets that they are using to benefit ABCO—a direct competitor.

64. Each day that Grundmeier's and ABCO's wrongful conduct continues, Plaintiffs continue to suffer immediate, ongoing, and irreparable harm in the form of the diminishment of the value of Plaintiffs' trade secret and confidential information, the resulting loss of business, goodwill, and competitive advantage, and monetary harm.

//

**H. Notice and Demand**

65. On July 29, 2026, Plaintiffs' counsel, Reed Smith LLP, sent cease-and-desist and demand letters to both Grundmeier and ABCO. The letters enclosed the Profits Interest Agreement and identified Plaintiffs' claims.

66. Grundmeier and ABCO were thereby placed on actual notice of Grundmeier's continuing contractual obligations and Plaintiffs' claims.

67. On August 10, 2026, ABCO provided written response to Integra's counsel. In its response, ABCO claims Grundmeier's post-employment restrictive covenants are void. ABCO specifically admits it inquired whether Grundmeier was subject to a non-compete, and based on a letter from Integra dated February 14, 2024 releasing Grundmeier's prior non-compete, hired him.

68. ABCO did not substantively respond to Integra's notice concerning Grundmeier's disclosure of, and ABCO's use of, Plaintiffs' trade secrets and/or confidential information.

69. ABCO affirmed its intent to "continue to bid and compete" in the market.

70. Grundmeier did not respond to Integra's letter.

**I. Plaintiffs Have Suffered Economic Harm and Will Continue To Suffer Irreparable Harm Through Defendants' Conduct**

71. As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiffs have suffered, and will continue to suffer, economic harm as well as irreparable harm.

72. Defendants' conduct has caused Plaintiffs to lose dozens of customers and thousands in annual revenue.

73. Plaintiffs have suffered and continue to suffer, loss and threatened further loss or disclosure of trade secrets; competitive disadvantage from ABCO's possession and use of Integra's confidential pricing, cost, customer, and bid information; loss of customer goodwill and relationships; and ongoing irreparable harm justifying injunctive relief.

74. Plaintiffs will suffer future economic losses as a result of this conduct.

75. In addition to these direct and consequential economic damages, Defendants'

conduct will and does continue to cause irreparable injury to Plaintiffs.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Breach of Contract

### Against Grundmeier

76. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

77. Holdings and Grundmeier entered into the Agreement, which constitutes a valid, binding, and enforceable contract between Grundmeier and Holdings, which is the direct parent company of Integra and the indirect parent company of RSA.

78. As subsidiaries of Holdings, Integra and RSA are direct beneficiaries under the terms of the Agreement.

79. Pursuant to the Agreement, Grundmeier undertook binding obligations to, among other things: (a) keep confidential and refrain from disclosing or using for his own account any Confidential Information of the Company Group (which includes Integra and RSA); and (b) deliver to the Company upon termination all records, reports, computer data, and copies thereof relating to the business of the Company Group.

80. Holdings substantially performed its obligations under the Agreement, including granting Grundmeier 15,000 Profits Interest Units and paying him $950,000 in retention compensation.

81. Grundmeier breached the Agreement by, among other things: (a) extracting, retaining, and disclosing Plaintiffs' Confidential Information, including over three years of cost and billing data, compiled customer/vendor contact lists, and active project bid files, for his own benefit and for the benefit of ABCO; (b) failing to deliver to Plaintiffs upon termination all records, reports, computer data, and copies thereof; (c) deleting Plaintiffs' records from his Integra-issued computer (including his profits interest agreement, retention agreements, and offer letter) on March 3, 2026; (d) deliberately clearing browser history during the period of his ABCO negotiations; and (e) using Plaintiffs' proprietary work

product, including estimating tools, bid spreadsheets, and pricing methodologies, for the benefit of ABCO.

82. As a direct and proximate result of Grundmeier's breaches, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, including but not limited to lost profits, loss of competitive advantage, and expenditures incurred in investigating and mitigating Grundmeier's misconduct.

83. Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs associated in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**Intentional Interference with Prospective Economic Advantage**

**Against all Defendants**

84. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

85. At all relevant times, Integra had existing economic relationships and prospective economic advantages with its customers and potential customers in the TAB and commissioning market, including relationships with Sutter Health, UC Berkeley, EMCOR Services, and other clients for whom Plaintiffs were actively bidding or performing work. There was a reasonable probability that these relationships would have resulted in future economic benefit to Plaintiffs.

86. Defendants knew of these prospective economic relationships and advantages.

87. Defendants engaged in conduct intended to disrupt and that did disrupt Plaintiffs' prospective economic advantages, including by: (a) using Plaintiffs' misappropriated trade secrets (cost data, pricing, customer contacts, and bid information) to identify and target Plaintiffs' customers and undercut Plaintiffs' competitive position, including prior to Grundmeier's resignation; (b) deliberately inflating Plaintiffs' bids to steer work to ABCO, including prior to Grundmeier's resignation; (c) diverting Plaintiffs' customers using Plaintiffs' confidential information; and (d) recruiting Plaintiffs' employees to assist in the diversion.

88. Defendants' conduct was independently wrongful, as it constituted trade-secret misappropriation, breach of contract, breach of fiduciary duty, and conspiracy.

89. As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs' economic relationship with one or more individuals or entities was negatively disrupted in the manner as alleged above.

90. As a direct and proximate result of Defendants' intentional interference, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

91. Additionally, Defendants' conduct, as alleged herein, was malicious, oppressive, and fraudulent, for which Plaintiffs are entitled to punitive or exemplary damages in an amount as to be determined at trial.

92. Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs associated in an amount to be determined at trial, to the extent permitted by applicable law.

**THIRD CLAIM FOR RELIEF**

**Breach of Fiduciary Duty/Common-Law Duty of Loyalty**

**Against Grundmeier**

93. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

94. Grundmeier owed Plaintiffs common-law fiduciary duties, including, but not limited to, a duty of loyalty and to act within the best interests of Plaintiffs at all times during the course of his employment at RSA, including, but not limited to, based upon the position of trust which he occupied at RSA.

95. Grundmeier's duty of loyalty to Plaintiffs included, without limitation, his obligations under Section 2863 of the California Labor Code, which provides that "[a]n employee who has any business to transact on his own account, similar to that entrusted to him by his employer, shall always give the preference to the business of the employer."

96. Grundmeier also executed the Agreement with Holdings that established that he had contractual and/or common-law fiduciary duties, including, but not limited to, a duty of loyalty and to act within the best interests of Plaintiffs at all times during the course of

his employment at RSA.

97. Grundmeier knowingly and intentionally breached his fiduciary and common-law duties owed to Plaintiffs by, among other things:

(a) secretly negotiating employment with ABCO while still employed by RSA;

(b) systematically extracting Plaintiffs' confidential information for delivery to ABCO while still employed;

(c) deliberately sabotaging Plaintiffs' competitive bids by inflating pricing to ensure Plaintiffs would not be awarded the contracts while still employed;

(d) structuring bids so that ABCO would receive the resulting work after Grundmeier's departure;

(e) diverting Plaintiffs' customers and business opportunities to ABCO while still employed by RSA; and

(f) deleting Plaintiffs' property and material from his Integra laptop.

98. Grundmeier's breaches of his fiduciary and common-law duties in the manner as alleged herein, were a substantial factor in causing harm to Plaintiffs in the manner alleged above.

99. As a further direct and proximate result of Grundmeier's breaches of his fiduciary and common-law duties as alleged herein, Plaintiffs have incurred damages in an amount to be determined at trial, including, but not limited to, actual damages, consequential damages, and the loss of future revenue.

100. Additionally, Grundmeier's breaches of his fiduciary and common-law duties, as alleged herein, were malicious, oppressive, and fraudulent, for which Plaintiffs are entitled to punitive or exemplary damages in an amount as to be determined at trial.

101. Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs associated in an amount to be determined at trial, to the extent permitted by applicable law.

**FOURTH CLAIM FOR RELIEF**

**Aiding & Abetting Breach of Fiduciary/Common Law Duty of Loyalty Against ABCO**

102. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

103. Grundmeier owed Plaintiffs common-law fiduciary duties including, but not limited to, a duty of loyalty and to act within the best interests of Plaintiffs at all times during the course of his employment at RSA including but not limited to, based upon the position of trust which he occupied at RSA. Grundmeier also owed Plaintiffs a statutory duty under Section 2863 of the California Labor Code while employed by RSA to always give preference to Plaintiffs' business in all business transactions and opportunities similar to the work that he performed for Plaintiffs.

104. Grundmeier knowingly and intentionally breached his fiduciary and common law duties owed to Plaintiffs in the manner as alleged above, including but not limited to, by (1) secretly negotiating employment with ABCO while still employed by RSA; (2) systematically extracting Plaintiffs' confidential information for delivery to ABCO while still employed; (3) deliberately sabotaging Plaintiffs' competitive bids by inflating pricing to ensure Plaintiffs would not be awarded the contracts while still employed; (4) structuring bids so that ABCO would receive the resulting work after Grundmeier's departure; (5) diverting Plaintiffs' customers and business opportunities to ABCO while still employed by RSA; and (6) deleting Plaintiffs' property and material from his Integra laptop.

105. Grundmeier's breaches of his fiduciary and common law duties in the manner as alleged herein were a substantial factor in causing harm to Plaintiffs in the manner alleged above.

106. ABCO knew that Grundmeier was breaching his fiduciary and common law and statutory duties to Plaintiffs by his extraction of confidential information for delivery to ABCO, sabotaging Plaintiffs' bids, and diverting customers and business opportunities to ABCO while still employed with RSA.

107. On information and belief, ABCO encouraged, supported, assisted, and/or

otherwise aided Grundmeier in breaching his fiduciary and common law duties to Plaintiffs by his extraction of confidential information for delivery to ABCO, sabotaging Plaintiffs' bids, and diverting customers and business opportunities to ABCO while still employed with Plaintiffs.

108. As a further direct and proximate result of ABCO aiding and abetting Grundmeier's breaches of his fiduciary and common law duties as alleged herein, Plaintiffs have incurred damages in an amount to be determined at trial, including but not limited to actual damages, consequential damages, and the loss of future revenue.

109. Additionally, ABCO's aiding and abetting Grundmeier's breaches of his fiduciary and common law duties, as alleged herein were malicious, oppressive, and fraudulent, for which Plaintiffs are entitled to punitive or exemplary damages in an amount as to be determined at trial.

110. Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs associated in an amount to be determined at trial, to the extent permitted by applicable law.

**FIFTH CLAIM FOR RELIEF**

**Violation of California Business and Profession's Code Section 17200**

**Against all Defendants**

111. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

112. As alleged above and herein, Defendants have engaged in an unlawful, unfair, or fraudulent business practice(s) or act(s) in violation of California Business and Professions Code Section 17200, *et seq*.

113. Defendants violated § 17200 by:

(a) secretly negotiating Grundmeier's employment with ABCO while still employed by RSA;

(b) systematically extracting Plaintiffs' confidential information for delivery to ABCO;

(c) Grundmeier deleting Plaintiffs' property and material from his Integra

laptop;

(d) systematically misappropriating Plaintiffs' trade secrets;

(e) deliberately sabotaging Integra's competitive bids while Grundmeier was still employed by RSA;

(f) conspiring to divert Plaintiffs' clients and revenue to ABCO;

(g) using Plaintiffs' confidential information to unfairly compete against Plaintiffs; and

(h) deceiving Plaintiffs regarding Grundmeier's loyalty and intentions while secretly extracting confidential information and undermining Plaintiffs' competitive position for the benefit of ABCO.

114. Defendants' conduct as alleged above was a substantial factor in causing harm to Plaintiffs.

115. As a further direct and proximate result of Defendants' conduct, Plaintiffs suffered actual harm and Defendants have been unjustly enriched.

116. Further, Defendants' violation of California Business and Profession's Code Section 17200, *et seq.* is on-going and is and will continue to cause Plaintiffs irreparable harm, for which Plaintiffs are entitled to injunctive relief.

117. As a further direct and proximate result of Defendants' violations as alleged herein, Plaintiffs have incurred substantial economic losses and Defendants have been unjustly enriched in an amount to be determined at trial, and Plaintiffs are entitled to restitution and disgorgement of profits in such amount to be determined at trial.

118. To the extent recoverable under applicable law, Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs associated in an amount to be determined at trial.

//

//

//

**SIXTH CLAIM FOR RELIEF**

**Intentional Interference with Contractual Relations**

**Against All Defendants**

119. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

120. At all relevant times, Plaintiffs had valid, existing contractual relationships and/or contracts certain to be entered into with their customers.

121. Defendants knew of these contractual relationships.

122. Defendants intentionally and unjustifiably interfered with Plaintiffs' contractual relationships by, among other things: (a) diverting a project—which Plaintiffs had been told they would receive and on which Plaintiffs had already begun performing work—to ABCO, and using relationships with individuals (Johnson and Pascoe) who obtained their positions of influence through work performed for Plaintiffs; (b) actively redirecting Plaintiffs' customers to ABCO through current RSA employees (including Harmon); and (c) using Plaintiffs' confidential information to underbid or undercut Plaintiffs' existing and pending contractual relationships.

123. The contractual relationships were disrupted due to Defendants' conduct.

124. As a direct and proximate result of Defendants' intentional interference, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

125. Additionally, Defendants' conduct, as alleged herein, was malicious, oppressive, and fraudulent, for which Plaintiffs are entitled to punitive or exemplary damages in an amount as to be determined at trial.

126. Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs associated in an amount to be determined at trial, to the extent permitted by applicable law.

**SEVENTH CLAIM FOR RELIEF**

**Civil Conspiracy**

**Against All Defendants**

127. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

128. Beginning no later than February 2026, Grundmeier and ABCO (through its owner Karatzias) formed a civil conspiracy—that is, an agreement between two or more persons to accomplish an unlawful objective or a lawful objective by unlawful means—to misappropriate Plaintiffs' trade secrets, divert Plaintiffs' business to ABCO, and otherwise unfairly compete against Plaintiffs.

129. In furtherance of the conspiracy, Grundmeier and ABCO committed the following overt acts, among others: (a) Grundmeier engaged in extended telephone communications with Karatzias (totaling 209 minutes in fifteen days) while still employed by RSA; (b) upon information and belief, Grundmeier traveled to ABCO's headquarters in Southern California during this period; (c) Grundmeier systematically extracted Plaintiffs' confidential cost, billing, contact, and bid data while still employed; (d) Grundmeier deliberately sabotaged Plaintiffs' competitive bids while still employed; (e) ABCO purchased commercial property in Roseville, California immediately after Grundmeier's departure, consistent with a pre-arranged expansion plan; (f) ABCO received contracts for work that Grundmeier had priced Plaintiffs out of or diverted; and (g) current and former RSA employees (including Harmon and Engman), on information and belief acting in coordination with Grundmeier and ABCO, actively redirected Plaintiffs' customers and resources to ABCO.

130. Each Defendant was aware of and agreed to the overall conspiracy and intended to further its objectives. Each Defendant committed or aided and abetted the commission of the underlying tortious acts (misappropriation of trade secrets, breach of fiduciary duties, intentional interference with contractual relations, and intentional interference with prospective economic advantage).

131. As a direct and proximate result of the conspiracy and the underlying tortious acts committed in furtherance thereof, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial. Each conspirator is jointly and severally liable for the damages caused by the conspiracy.

132. Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs

associated in an amount to be determined at trial, to the extent permitted by applicable law.

**EIGHTH CLAIM FOR RELIEF**

**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.***

**Against All Defendants**

133. Plaintiffs incorporate by reference allegations 1 through 75 above as though fully set forth herein.

134. Plaintiffs are the sole owners of compilations of information that is not available in the public domain, including but not limited to cost and billing data, project-level pricing, labor costs, margins, and billing histories, customer and vendor contact information—including names, email addresses, company affiliations, and relationship histories, active project bids, proprietary estimating tools, project-specific bid files containing Plaintiffs' proprietary pricing methodologies, labor calculations, and competitive positioning that (1) are created by Plaintiffs at substantial effort and expense; (2) add value to the information contained therein; and (3) would provide a competitive advantage if made available to Plaintiffs' competitors. Plaintiffs consider specific aspects of these compilations, systems, and methodologies to be trade secrets.

135. Plaintiffs' trade secrets described herein are not generally known or ascertainable, cannot be gleaned from the public domain, and cannot be reverse engineered. Rather, the information is the product of years of development, research, and refinement.

136. Plaintiffs derive independent economic value, actual and potential, from these trade secrets not being generally known to, and not being readily ascertainable through proper means by, its competitors, including ABCO, because they contain enough information to enable a competitor, like ABCO, to usurp business opportunities from Plaintiffs and deprive them of substantial profit.

137. Plaintiffs have taken reasonable measures to keep these trade secrets secret, including but not limited to: requiring employees to execute confidentiality agreements (including the Agreement); maintaining electronic access controls, passwords, and permissions on its computer systems; restricting access to sensitive cost, billing, and pricing

data to authorized personnel; maintaining locked doors and filing cabinets in its offices; training employees regarding their confidentiality obligations, and mandating the return of all company property upon the termination of employment.

138. Plaintiffs' trade secrets are used in interstate commerce because they are directly related to Plaintiffs' business and Plaintiffs' ability to offer its services to customers who are located across the United States. Plaintiffs provide TAB and commissioning services to clients operating across state lines, Plaintiffs use interstate telecommunications and computing services, and Plaintiffs' cost, billing, and customer data relates to projects in multiple states.

139. Through his employment with RSA, Grundmeier was given privileged access to Plaintiffs' trade secrets in accordance with his job duties.

140. As a former employee, and because he agreed to the confidentiality provision in the Agreement, Grundmeier was and remains under a duty to keep Plaintiffs' confidential and proprietary information secret, and to refrain from using or disclosing such information other than for the benefit of Plaintiffs and with Plaintiffs' authorization.

141. Grundmeier misappropriated Plaintiffs' trade secrets by acquiring them through improper means (including exceeding his authorized access to extract mass data compilations for a competitor) and/or by disclosing or using them without Plaintiffs' consent for the benefit of himself and ABCO, despite knowing or having reason to know that the trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy.

142. Grundmeier improperly accessed, misappropriated, and/or used Plaintiffs' trade secrets to solicit, while employed by RSA and after his resignation, Plaintiffs' customers to award work to ABCO instead of Plaintiffs. Grundmeier's conduct is in direct conflict with Plaintiffs' business interests.

143. Grundmeier was hired by ABCO.

144. ABCO is a direct competitor to Plaintiffs.

145. ABCO and Plaintiffs compete for many of the same customers and prospective

customers.

146. ABCO improperly acquired and has used Plaintiffs' trade secrets for its own efforts to divert Plaintiffs' business to ABCO for its economic gain, and to aid and abet Grundmeier's efforts.

147. Plaintiffs' trade secrets qualified as a trade secret at the time Defendants engaged in misappropriation and misuse alleged herein.

148. Grundmeier did not have authority to use Plaintiffs' trade secrets for non-Integra-related business purposes, including, but not limited to, to divert Plaintiffs' customers to his new employer, ABCO.

149. On information and belief, at the time of the disclosure and use, Grundmeier and/or ABCO had reason to know and knew that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy and/or limit their use.

150. The misappropriation was willful and malicious. Grundmeier systematically planned and executed the extraction of Plaintiffs' trade secrets over a period of weeks while secretly negotiating with ABCO, and both Grundmeier and ABCO continued to use the trade secrets for competitive advantage after receiving Reed Smith LLP's July 29, 2026 cease-and-desist letters placing them on actual notice, including by bidding on projects for Plaintiffs' customers using the misappropriated information.

151. As a direct and proximate result of Defendants' violations as alleged above, Plaintiffs have incurred damages in an amount to be determined at trial, including but not limited to actual damages, consequential damages, and the loss of future revenue, as well as recoverable attorneys' fees and costs.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief as to all Defendants jointly and severally:

1. For a judgment in favor of Plaintiffs and against Defendants on all causes of action;

2. Temporary, preliminary, and permanent injunctive relief (a) barring Defendants, and all persons acting in concert or participation with them, from using, disclosing, or disseminating any of Plaintiffs' confidential information and trade secrets; (b) requiring Defendants to return to Plaintiffs all documents, files, data, and materials (in any form) containing Plaintiffs' confidential information and trade secrets; and (c) barring Defendants from soliciting or diverting Plaintiffs' customers or employees using Plaintiffs' confidential information;

3. Monetary damages to fully compensate Plaintiffs for all harm caused by the Defendants;

4. Restitution and/or disgorgement of unjust enrichment by the Defendants;

5. Exemplary damages up to twice the amount of damages suffered by Plaintiffs pursuant to Title 18, United States Code Section 1836(b)(3), or as otherwise provided by law;

6. Punitive, consequential, or other damages as allowed by law;

7. Attorneys' fees incurred in this action by Plaintiffs;

8. Costs of suit and all other recoverable or allowable costs;

9. All pre-judgment and post-judgment interest in an amount provided by law; and

10. All other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for each and every claim for relief for which they are entitled under the law to a trial by jury.

DATED: August 27, 2026 REED SMITH LLP

By /s/ *Adria K. Herry*
Adria K. Herry (SBN 324333)
Email: AHerry@reedsmith.com
REED SMITH LLP

1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
Telephone: +1 310 734 5200
Facsimile: +1 310 734 5299

David W. Long-Daniels (*Pro Hac Vice Forthcoming*)
DLong-Daniels@reedsmith.com
Ansley K. Fantaski (*Pro Hac Vice Forthcoming*)
Afantaski@reedsmith.com
REED SMITH LLP
1020 Spring Street NW, Suite 1100
Atlanta, GA 30309
Telephone: 470.947.5800
Facsimile: 470.947.5799

*Attorneys for Plaintiffs*